FRED L. NESBIT, APPELLEE, v. FRANCIS T. GIBLIN ET AL., APPELLANTS.

FILED JUNE 23, 1914.  No. 17,823.

1. **Master and Servant:** RESIGNATION OF EMPLOYEE: ACCEPTANCE. Where one employed by the year as a traveling salesman is criticized for granting a minor concession to a customer of his employer, writes to such employer offering conditionally to resign his position, and the employer does not accept the offer but continues the salesman in his employment for more than 30 days, and accepts the benefits of his services, the employer cannot thereafter avail himself of the conditional offer to resign.

2. ———: DISCHARGE OF EMPLOYEE: DAMAGES. In such a case the employer cannot discharge the employee without responding in damages, unless the employee is guilty of some misconduct subsequent to the making of his conditional offer of resignation.

3. **Evidence** examined, and found insufficient to authorize the discharge of the employee.

4. **Instructions** given and refused examined, and found to be without reversible error.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*Will H. Thompson* and *Will E. S. Thompson,* for appellants.

*McGilton, Gaines & Smith, contra*

96 Neb. 24

BARNES, J.

This action was brought in the district court for Douglas county to recover damages alleged to have been sustained by plaintiff for his wrongful discharge from his employment as a traveling salesman of the defendant company. The plaintiff's petition was in the usual form in such cases. By defendant's answer it was alleged that plaintiff had tendered his resignation as defendant's salesman on May 21, 1910, and that defendant had accepted plaintiff's resignation; that plaintiff had been guilty of unjust criticism and insolent conduct toward his employer; that defendant had been guilty of using part of his time in his own private affairs. The reply was in effect a general denial. There was a trial to a jury, which resulted in a verdict and judgment for the plaintiff for $1,054.13, and the defendant has appealed.

It appears that on the 21st day of December, 1909, defendant, Giblin & Company, employed the plaintiff as a traveling salesman for one year, at a salary of $2,100, payable in monthly instalments of $175 a month. The contract was in writing.

The bill of exceptions discloses that in May, 1910, certain differences arose between plaintiff and defendant out of a sale made by the plaintiff to the firm of Abel & Doyle of Indianapolis, Indiana. Plaintiff had been continuously in the employ of the defendant, with the exception of one year, for the ten years preceding the written contract of December 21, 1909. It is apparent that he had been a trusted employee, and had often advised with his employers in respect to their business affairs. When the plaintiff visited the firm at Indianapolis, known as Abel & Doyle, he took a certain order for furnaces, which was submitted to his employers under a blank form, and subject to their approval. The above mentioned sale was the subject of a letter to plaintiff from defendant, written May 16, 1910, which contained some very caustic criticisms of plaintiff's method of doing business. The letter contained this language:

"When all is said and done, we are the ones who are paying your salary and expenses, and we can only do so out of the profit we make on the goods we sell, and your inclinations are very strongly in the way of giving to customers everything possible that you can give them.  *  *  * We wish you would bear this carefully in mind, and before making concessions to customers find out what we think about the matter before making these concessions. This refers particularly to what you have done for Haines and also what you have done for Abel & Doyle. During the past year we have sold Abel & Doyle our 7 series furnaces on exactly the same terms we sold the other furnaces, and never had any complaint about it, nor any suggestions that we should do any differently. We find that you have given them 5% additional on the 8 series furnaces and believe this 5% was given to them without any need whatever and is just so much thrown away.  *  *  * We certainly are not at all pleased that you go to old customers and reduce prices to them which we consider wholly unnecessary, and it leads us to believe that it might be better not to have sent you there at all. On the order you have sent in, the difference is $63.19, an wholly unnecessary allowance."

When plaintiff received this letter, which seemed to reflect both on his ability as a salesman and his integrity, he wrote to his employers with respect thereto. The letter was written on May 20, and, among other things, contained the following statement:

"By thus making them this discount, I swung them over to the 8 series so that they will handle that instead of the 4 series, which they declared they would not handle more than to carry the sample at the old price. Now, by handling this in the way I did, they will use the 8 series and at a price which is an advance on the same size furnaces and the same size fire pots, with the same amount of iron of about 7½% over last year's price." The letter also contained the following: "After getting this much of an advance on this contract and handling it in this way, you tell me in your letter that I deliberately cut the price and

am not working to your interest. Any such thought or idea of my deliberately cutting the price and not working to your interest is as far from the truth as you are today from Halley's comet, and if there has ever been any deal made or transaction by me since I have been in your employ in which your interest has not been fully considered to the best of my judgment, it has been because my judgment has not been good, and not because my intentions were wrong. * * * While I have a contract with you yet for the balance of this year, I should feel guilty to accept the salary and have you feel as you intimate in this letter that you do feel, and if you have any such feeling, I would be glad to have you accept my resignation and I will remain here until I hear from you, for I do not feel that I could go to Minneapolis and put up the fight that is necessary—or any other place—in the interest of your business, with any such an insinuation resting against me as I infer from your letter."

It will be observed that this letter contains an offer to resign, coupled with the condition, however, that the writer will remain where he is until he receives a reply. The defendant did not answer this letter. In a few days the plaintiff went to Minneapolis and transacted business there for the defendant in the way of an adjustment of some former sales, and while there again wrote to the defendant. Meanwhile no intimation was made by the defendant that it intended to accept the plaintiff's conditional offer to resign, but defendant wrote again finding fault with plaintiff's sales at Indianapolis. Without quoting these letters, it is sufficient to say that they contained repeated faultfindings with plaintiff's conduct, and also were full of criticisms and somewhat insolent statements. On May 29, the plaintiff wrote the defendant as follows:

"I wish to say in the above paragraph you have assumed and said things that have not been proven, cannot be proven, and while I have no money to give away to any one, I will send you a check at any time for $100 if you can prove the above assertion, that they (meaning Abel & Doyle) intended to use all along the 8 series. You say

farther along in your letter, on page 3 of same, they had no intention of ordering 4 series furnaces and would not have done so in any case. They intended ordering just what they did order and they got from me $57.93 better price than they would have been willing to pay, and it was this action of which you complained. If this statement is true, as above stated, then what I have said to you is not true and I will not rest under the above accusation from you or any one else. Unless I hear from you immediately on receipt of this letter, retracting the above statements, which I defy you or any one else to prove, as soon as I am finished up with the transactions here in connection with the Gilmore deal, I will leave immediately for Indianapolis, Indiana, and procure affidavits substantiating my statements to you."

On June 4 defendant telegraphed to plaintiff that no answer would be given to his letter. The plaintiff then went to Indianapolis and procured some affidavits respecting the matter and forwarded the same to his employers. In pursuance of his employer's business, Mr. Nesbit went to Minneapolis and settled an old and complicated deal whereby he collected some $900 for his employers. It appears that plaintiff's wife had been ill and in the hospital since November, and in June he wrote to his employers to the effect that he wished to take his wife home, and it would be necessary to use one or two days in his affairs at Omaha in straightening out the house so his wife could live in it. The plaintiff returned to Omaha about June 8, and, with the exception of a day in straightening up his affairs, he was engaged in his employers' business, taking an order at Council Bluffs, Iowa, and likewise one at Onawa, which were sent to the defendant, who on June 20 wrote the plaintiff as follows: "In a letter addressed to us from Milwaukee, dated May 21, you tendered your resignation. We write you to say that we hereby accept this resignation to take effect immediately. Please send to us at once all books, letters of introduction, etc., belonging to us, and send statement of your expense account to date."

To this letter plaintiff replied as follows: "Answering your letter of June 20 with reference to my letter from Milwaukee on May 20 in reference to my tendering my resignation at that time, I did so, and would have been very much pleased to have had you accept it at that time which I asked you to do and said I would remain in Milwaukee until I heard from you. In your answer you did not accept my resignation. I therefore kept on at work. I would say at this time that conditions have changed and the opportunities I had at that time have been lost and under the present conditions I am still in your employ, working under contract of 1910, and am waiting here for your directions as to route, also expense money."

To this letter defendant replied on June 24 as follows: "Answering yours of June 22, your resignation was presented to us and accepted and your services with us are ended. * * * We have today inserted a notice in the trade papers, stating that you are no longer in our employment," etc.

It will thus be observed that the basis for the discharge of plaintiff in both of defendant's letters was that they had accepted his offer to resign on May 20. Notwithstanding this claim, defendant wrote to plaintiff on June 6 in relation to some advertising matter, and their letter contains the following: "We intend following up these with issues at frequent intervals until November, and will forward them to you as issued. You will probably run across them in the hands of some of the dealers you visit. We will keep you fully informed in regard to all inquiries in your territory so that you may follow them up closely and get sample orders."

This letter was written two weeks after the plaintiff made his conditional offer to resign, and it thus appears that defendant had no intention to accept his conditional offer of resignation, but on the contrary expected him to continue his work. Whether the plaintiff acted prudently or wisely in the matter of the contract with Abel & Doyle was not an issue in this case. He felt aggrieved at the caustic criticisms of his employers, and wrote them that he

was willing to tender his resignation, as he did not wish to continue in their service if they felt toward him as their letters seemed to indicate. Their answer to his letter clearly intimated that they would expect him to continue in their employ, and their telegram to the effect that no answer would be given to his letter informing them of his intended trip to Indianapolis implied that they did not object to his making that trip. The matter, however, is of minor importance, because the affidavits which he obtained in Indianapolis were forwarded to the defendants, and they did not write to him concerning it, and made no criticism in relation to it. When they discharged the plaintiff some two weeks later, they made no reference to the affidavits or his conduct in that matter, but based the reason for his discharge specifically upon the ground that they had accepted his resignation which had been tendered more than 30 days before. Having thus assigned a reason for the plaintiff's discharge, the defendant should not be now heard to urge any other or different reason.

Upon the testimony, which has been partially set forth in the opinion, the cause was submitted to the jury, and defendant contends that the court erred in instruction No. 6, given to the jury on his own motion. The instruction complained of reads as follows: "You are instructed the letter written by the plaintiff on the 20th or 21st day of May, 1910, was not of itself a letter of resignation, but was what might be termed in law a conditional resignation, and by the terms and conditions of said letter the defendants had the right to accept or reject the said resignation on or before the time fixed by the said letter of said date. And in this connection you are further instructed the defendants did not comply with the terms and conditions of said letter on that date, and, as a matter of law, had no right to accept said resignation at a later time than that fixed by the terms and conditions of said letter, unless you find from a preponderance of the evidence that the plaintiff was guilty of misconduct toward the defendants subsequent to the time he left Milwaukee for Minneapolis or unless you further find that the defendants had

discovered other misconduct of the plaintiff that occurred prior to the time they answered the letter written by the plaintiff at Milwaukee, Wisconsin, dated on the 20th or 21st day of May, 1910."

We think this instruction correctely stated the law. There was no conflict in the evidence, and, as we view the letters which passed between plaintiff and defendant, plaintiff's conditional letter of resignation was not accepted by the defendant, but plaintiff was deliberately continued in his employment for practically 30 days after he wrote the letter of May 21, 1910.

It is next contended that the court erred in refusing to give instruction No. 6, requested by the defendant, as follows: "The court instructs the jury that, in his letter of May 21st, the plaintiff tendered his resignation to the defendants, and that, unless you find that said resignation had been withdrawn prior to the 20th day of June, the defendants had the right to accept said resignation, and that after such acceptance said resignation could not be withdrawn." We think the court was justified in refusing this instruction, as it does not accord with the facts and is not applicable to the evidence contained in the record.

Numerous other errors are assigned in giving and refusing instructions. We have examined the instructions given and refused, and find the same to be without reversible error.

It is contended that the defendant was justified in discharging the plaintiff because he was guilty of disrespectful conduct toward his employer; that plaintiff was a man of superior ability and education, and that his conduct toward his employer was neither due to inadvertence nor ignorance, and therefore the defendant was justified in discharging him from its service. A careful examination of the correspondence discloses that the plaintiff treated the defendant in all of the letters written by him with reasonable courtesy and consideration. We find nothing in plaintiff's conduct which would justify the defendant in discharging him. It appears from the testimony that plaintiff, from the time he was discharged until the lat-

ter part of December, 1910, was unable to find profitable employment, and therefore the amount of the verdict is not excessive. In fact no serious complaint of that kind is made by the appellant.

As we view the record, the defendant had a fair trial, and, finding no reversible error in the record, the judgment of the district court is

AFFIRMED.

LETTON, J., concurs in the conclusion.

ROSE, J., not sitting.